IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAROL J. TACCINO, et al.,            :

      Plaintiffs,                   :

v.                            :          Civil Action No. GLR-18-913

FORD MOTOR CO., et al.,         :

      Defendants.             :

## MEMORANDUM OPINION

THIS MATTER is before the Court on twelve motions: (1) Defendant OneMain Financial Group, LLC's ("OneMain")[1] Motion to Compel Arbitration or, in the Alternative, Dismiss Plaintiffs' Complaint (ECF No. 37); (2) Defendant Mariner Finance, LLC's ("Mariner Finance") Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss (ECF No. 26); (3) Defendant Ford Motor Co.'s ("Ford Motor") Motion to Dismiss Plaintiffs' Complaint (ECF No. 13); (4) Defendant BB&T Corp.'s[2] ("BB&T") Motion to Dismiss (ECF No. 29); (5) Defendant Diehl's Ford Sales, Inc.'s ("Diehl's") Motion to Dismiss the Complaint (ECF No. 10); (6) Defendant Chessie F.C.U.'s ("Chessie") Motion to Dismiss (ECF No. 30); (7) Defendant Northwest Bancshares, Inc.'s ("Northwest Bancshares") Motion to Dismiss the Complaint (ECF No. 23); (8) Defendant WEPCO F.C.U.'s ("WEPCO") Motion to Dismiss (ECF No. 31); (9) Plaintiffs Carol J. Taccino ("Ms. Taccino") and William A. Taccino's ("Mr. Taccino") (collectively, "the

---

[1] The Complaint misidentifies OneMain as OneMain Financial Holding, LLC.

[2] BB&T notes that the Complaint improperly identifies Branch Banking and Trust Company as BB&T Corp.

Taccinos") "Motion for Sanctions and Plaintiff[s'] Motion to Join United States of America as Co-Plaintiff" (ECF No. 43); (10) the Taccinos' Motion to Join the United States of America as Co-Plaintiff (ECF No. 44); (11) the Taccinos' Motion for Order of Default or, in the Alternative, Order to Compel (ECF No. 45); and (12) the Taccinos' Motion for Order of Default or, in the Alternative, Motion to Compel (ECF No. 48). This case arises from Ms. Taccino's September 16, 2016 response to a Diehl's advertisement for a new Ford Explorer. The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant OneMain's Motion, Mariner Finance's Motion, Ford Motor's Motion, Diehl's Motion, BB&T's Motion, Chessie's Motion, Northwest Bancshares' Motion, and WEPCO's Motion. The Court will deny the Taccinos' Motions.

## I.     BACKGROUND[3]

On September 16, 2016, Ms. Taccino responded to a Diehl's newspaper advertisement for a new Ford Explorer. (Compl. at 2, ECF No. 1). The advertisement promised the buyer $2,000.00 in "Ford bonus cash," and promised any buyers who were active or retired members of the military a $750.00 "service appreciation from Ford." (Id. at 2). Acting on behalf of his wife, Mr. Taccino gave Ms. Taccino's social security number and income information to a Diehl's employee to "get the transaction started." (Id.). Several days later, Diehl's informed the Taccinos that Ms. Taccino's loan application had

---

[3] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

been denied. (Id. at 3). The Diehl's representative told the Taccinos that he had "even tried other local banks on her behalf, without success." (Id.).

Over the next few weeks in September and October 2016, Ms. Taccino received loan denials from Ford Motor Credit, WEPCO, Chessie, and BB&T Corp. (Id. at 3–4). Capital One Auto Finance[4] sent a letter stating that they had extended a loan offer, but that it had expired. (Id. at 4). OneMain and Mariner Finance granted Ms. Taccino loans. (Id. at 5). Northwest Bank[5] sent Ms. Taccino a letter "welcoming her to Northwest Bank," and indicating that one of her preexisting loans had been transferred to them. (Id.).

The Complaint also contains facts related to Ms. Taccino's June 10, 2010 arrest for trespassing on Chessie's property. (Id. at 7–8). Ms. Taccino went to Chessie's main office to get information regarding a credit card company's garnishment of wages from her account. (Id. at 8). Chessie refused to provide the information Taccino requested, and she was ultimately arrested and charged with trespassing. (Id.).

On March 29, 2018, the Taccinos, proceeding pro se, sued Defendants alleging: (1) "violation of federal laws regarding fraud"; (2) "violation of state laws regarding fraud"; (3) "violation of federal laws and regulations regarding banking"; (4) "violation of state laws and regulations regarding banking"; (5) breach of contract; predatory lending; (6) discrimination; violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq. (2018); (7) violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681b (2018); (8) violation of the Fifth and Sixth Amendments to the U.S. Constitution; and (9)

---

[4] Capital One Auto Finance is not a Defendant in this case; Capital One, Inc. is.
[5] Northwest Bank is not a Defendant in this case; Northwest Bancshares is.

violation of 28 C.F.R. § 50.15 (2018).[6] (Compl. at 1, 6–11). The Court construes the Taccinos' Fifth and Sixth Amendment claims as being brought under 42 U.S.C. § 1983. The Taccinos seek monetary damages. (Id. at 11–13).

On June 15, 2018 Diehl's filed a Motion to Dismiss the Complaint. (ECF No. 10). The Taccinos filed an Opposition on July 3, 3018. (ECF No. 28). On July 20, 2018, Diehl's filed a Reply (ECF No. 40).

On June 19, 2018, Ford Motor filed a Motion to Dismiss Plaintiffs' Complaint. (ECF No. 13). On July 6, 2018, the Taccinos filed an Opposition. (ECF No. 32). Ford Motor filed a Reply on July 23, 2018. (ECF No. 42).

On June 26, 2018 Northwest Bancshares filed a Motion to Dismiss the Complaint. (ECF No. 23). The Taccinos filed an Opposition on July 13, 2018. (ECF No. 36). On July 19, 2019, Northwest Bancshares filed a Reply. (ECF No. 39).

On July 3, 2018, Mariner Finance filed a Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss. (ECF No. 26). The Taccinos filed an Opposition on July 20, 2018. (ECF No. 41). Mariner Finance filed a Reply on August 3, 2018. (ECF No. 46).

On July 5, 2018, BB&T filed a Motion to Dismiss. (ECF No. 29). On July 27, 2018, the Taccinos filed an Opposition and Motion for Order of Default or, in the Alternative, Order to Compel. (ECF No. 45). BB&T filed a Reply on August 13, 2018. (ECF No. 51).

---

[6] This regulation is titled "Representation of Federal officials and employees by Department of Justice attorneys or by private counsel furnished by the Department in civil, criminal, and constitutional proceedings in which Federal employees are sued, subpoenaed, or charged in their individual capacities." True to the title, it provides for counsel, in some circumstances, for government employees sued in their individual capacities.

On July 5, 2018, Chessie filed a Motion to Dismiss the Complaint (ECF No. 30). The Taccinos filed an Opposition and a Motion to Join on July 27, 2018. (ECF No. 44). On August 10, 2018, Chessie filed a Reply. (ECF No. 49).

On July 5, 2018, WEPCO filed a Motion to Dismiss the Complaint. (ECF No. 31). On July 27, 2018, the Taccinos filed an Opposition and Motion for Sanctions and Plaintiff[s'] Motion to Join United States of America as Co-Plaintiff. (ECF No. 43). WEPCO filed a Reply on August 10, 2018. (ECF No. 50).

On July 16, 2018, OneMain filed a Motion to Compel Arbitration or, in the Alternative, Dismiss Plaintiffs' Complaint. (ECF No. 37). The Taccinos filed an Opposition on August 3, 2018. (ECF No. 47). OneMain filed a Reply on August 16, 2018. (ECF No. 52).

On August 3, 2018, the Taccinos filed a Motion for Order of Default or, in the Alternative, Motion to Compel. (ECF No. 48). To date, the Court has no record that any of Defendants filed an Opposition.

## II.      DISCUSSION

### A.      Motions to Compel Arbitration

#### 1.      Standard of Review

The standard of review on a motion to compel arbitration under the Federal Arbitration Act ("FAA") is "akin to the burden on summary judgment." Novic v. Midland Funding, LLC, 271 F.Supp.3d 778, 782 (D.Md. 2017) (quoting Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 (4th Cir. 2016) (internal quotation omitted)). In reviewing a motion for summary judgment, the Court views the facts in a light most

favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4). In the context of a motion to compel arbitration under the FAA, "the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support." Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015) (citing Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)).

The FAA provides, with limited exceptions, that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2018). To compel arbitration, the moving party must demonstrate: (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the defendant to

arbitrate the dispute.'" <u>Galloway</u>, 819 F.3d at 84 (quoting <u>Rota-McLarty v. Santander</u> <u>Consumer USA, Inc.</u>, 700 F.3d 690, 696 n.6 (4th Cir. 2012)).

The United States Court of Appeals for the Fourth Circuit in <u>Choice Int'l Hotels,</u> <u>Inc. v. BSR Tropicana Resort, Inc.</u>, held, "[n]otwithstanding the terms of § 3 [of the FAA] . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." 252 F.3d 707, 709–10 (4th Cir. 2001). This Court has uniformly dismissed cases where all of the claims are arbitrable. <u>See, e.g.</u>, <u>Bey v. Midland Credit Mgmt., Inc.</u>, No. GJH-15-1329, 2016 WL 1226648, at \*5 (D.Md. Mar. 23, 2016) (granting defendant's motion to dismiss when it moved to stay or in the alternative dismiss, holding that "because all of the Plaintiff's claims . . . are subject to arbitration, dismissal of this action is appropriate").

### 2. Analysis

#### a. OneMain's Motion

OneMain requests that the Court compel arbitration of the Taccinos' claims against it or, alternatively, to dismiss the Complaint. OneMain contends that all the requirements to compel arbitration under the FAA are met: (1) this suit is evidence of a dispute between the parties; (2) the parties executed a loan agreement in July 2017, which contains an arbitration provision that governs this dispute; (3) OneMain's business transactions involve interstate commerce; and (4) the Taccinos have failed to arbitrate this dispute. The Taccinos state that they agree to arbitrate the dispute. Accordingly, the Court will grant OneMain's Motion and dismiss the Complaint against OneMain. <u>See Bey</u>, 2016 WL 1226648, at \*5.

### b. Mariner Finance's Motion

Mariner Finance argues that the Note, Security Agreement & Arbitration Agreement (the "Note") that the Taccinos executed when they took out a loan with Mariner Finance is binding and compels arbitration of the claims in this lawsuit. The Court agrees with Mariner Finance and addresses the factors for compelling arbitration.

First, there is a dispute between the parties. The Taccinos allege that Mariner Finance "committed fraud by charging . . . an illegal interest rate of 25.99%," by defrauding Ms. Taccino out of a $200.00 refund for life insurance, and by defrauding Mr. Taccino out of his ownership share in the 1996 Jeep that Ms. Taccino pledged as collateral for her loan. (Compl. at 10). Mariner Finance argues that the Taccinos have not provided any evidence of fraud or other illegal actions.

Second, the Note requires the parties to submit this dispute to arbitration. Mariner Finance submitted a copy of the Note, signed by Ms. Taccino, as Exhibit A to its Motion. (Mariner's Mot. Compel Arbitration Ex. A ["Arbitration Agreement"] at 4–5, ECF No. 26-2). The Note states that "[b]y signing below, [Ms. Taccino] agree[s] to all of the terms of [the Note] and the arbitration agreement." (Id. at 5). The Arbitration Agreement defines arbitrable claims broadly as: "any claim, dispute or controversy [ ]whether based upon contract, tort, intentional or otherwise, constitutional, statute common law or equity . . . . arising from or relating to: this note; the loan evidenced by this note." (Id.). The dispute here is covered by this broad language.

Third, the transaction in dispute relates to interstate commerce. As a national bank, Mariner Finance necessarily conducts interstate commerce. Fourth, the Taccinos failed to

or refused to arbitrate the dispute. Under the terms of the Arbitration Agreement, either party may elect to arbitrate "all disputes and claims." (Arbitration Agreement at 4–5). Despite Mariner Finance's election of arbitration in this Motion, the Taccinos have refused to comply.

The Taccinos argue that the Arbitration Agreement is void because Ms. Taccino's signature is above the Arbitration Agreement, and because the Arbitration Agreement is based on fraud. The Court disagrees with the Taccinos. In bold font, immediately above Ms. Taccino's signature, the Note states that it contains an arbitration agreement. Further, courts in the District of Maryland have granted motions to compel based on identical language. See Castellanos v. Mariner Finance, LLC, MJG-17-3168, 2018 WL 488725, at *2 (D.Md. Jan. 19, 2018). The Arbitration Agreement covers disputes arising from or related to either the Note or the loan evidenced by the Note.

In sum, Mariner Finance has made the necessary showing to compel arbitration and the Taccinos have not provided sufficient facts to establish an unequivocal denial of the existence of the Arbitration Agreement. Chorley Enters., Inc., 807 F.3d at 564. Thus, the Court concludes that the Taccinos must arbitrate their fraud claims.

In this case, because all of the Taccinos claims against Mariner Finance are subject to arbitration, "no useful purpose will be served by staying the pertinent proceedings pending arbitration." Taylor v. Santander Consumer USA, Inc., No. DKC 15-0442, 2015 WL 5178018, at *7 (D.Md. Sept. 3, 2015) (quoting In re Titanium Dioxide Antitrust Litig., 962 F.Supp.2d 840, 856 (D.Md. 2013)). Accordingly, the Court will grant Mariner

Finance's Motion and dismiss the Taccinos claims against it. If the Taccinos choose to pursue their claims against Mariner Finance, they must do so through arbitration.

**B.** **Motions to Dismiss**

    **1.** **Standard of Review**

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). To overcome a Rule 12(b)(6) motion, the complaint must allege sufficient facts to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible when the facts in the complaint allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Courts may construe pleadings of pro se litigants liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678. When a Rule 12(b)(6) motion is based on res judicata, the Court may "take judicial notice of facts from a prior judicial proceeding" so long as the defendant's argument for res judicata "raises no disputed issue of fact." Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

2.    **Analysis**

a.    **Ford Motor's Motion**

Ford Motor contends that the Court should dismiss the Taccinos claims against it because it is the wrong party and the Court lacks personal jurisdiction over it. The Taccinos counter that Ford Motor is "clearly the moving party at interest," (Pls.' Resp. Opp'n Ford's Mot. Dismiss at 2, ECF No. 32), and that the Court may exercise jurisdiction over Ford Motor. The Court agrees with Ford Motor—it is the wrong party.

Here, the Complaint alleges that "Defendant Ford Credit" denied Ms. Taccino's loan application in an October 15, 2016 letter. (Compl. at 3). In ruling on Ford Motor's Motion, the Court also considers the copy of the October 2016 denial letter that the Taccinos attached to the Complaint.[7] (Compl. Ex 1, ECF No. 1-1). The letter is from "Ford Motor Credit Company," not Ford Motor. (See id.). Further, as the Taccinos allege in the Complaint, they sent Ford Motor a letter on May 12, 2017 asking the company to take responsibility for its wrongdoing. (Compl. at 6; id. Ex 13, ECF No. 1-13). Ford Motor forwarded this letter to Ford Credit, and Ford Credit sent the Taccinos a response. The response conceded that on September 26, 2016, Ford Credit received a credit application, submitted on the Taccinos' behalf, from Diehl's. (Compl. Ex 14, ECF No. 1-14). This

---

[7] The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). A court may, however, consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006), when assessing a 12(b)(6) motion. Accordingly, the Court considers the documents attached to the Complaint.

credit application and its subsequent denial, rather than any action on the part of Ford Motor, forms the basis of the Taccinos' allegations against Ford Credit. (See Compl. at 2–3, 6 ("Ford Motor/Credit pulled her credit on this without her permission . . . Ford Motor/Credit and/or Diehl's Ford gave out [Ms. Taccino's] personal information to other loan entities."). Finally, Ford Motor and Ford Credit are independent corporate entities. (See Ford's Mot. Dismiss Pls.' Compl. Ex 3, ECF No. 13-4; id. Ex 4, ECF No. 13-5). Based on the facts alleged in the Complaint and the Complaint's exhibits, the Court concludes that the Taccinos have sued the wrong party. Ford Credit, not Ford Motor, received and denied a loan application for the Taccinos.

In their Opposition, the Taccinos argue that Ford Motor was responsible for the misleading newspaper advertisement that precipitated Ms. Taccino's harm. But in the Complaint, the Taccinos state the advertisement was "by Diehl's Ford." The Taccinos cannot amend their pleadings through their briefings. See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184–85 (4th Cir. 2013). Accordingly, as currently alleged, Diehl's Ford was responsible for the advertisement.

In sum, the Taccinos have not plausibly alleged any claims against Ford Motor. Accordingly, the Court will grant Ford Motor's Motion.

### b.    BB&T's Motion

BB&T contends that the only claim alleged against it is a violation of the FCRA, and that the Taccinos fail to state an FCRA claim. The Taccinos do not dispute these

contentions. Instead, the Taccinos argue that BB&T Dealer Finance, rather than BB&T, wrongfully pulled Ms. Taccino's credit without her consent.[8]

Under 15 U.S.C. § 1681b(f), a person may "not use or obtain a consumer report for any purpose" not authorized under the FCRA. To state a claim for acquisition of a credit report in violation of the FCRA, "a plaintiff must allege facts showing each of the following: (i) there was a consumer report; (ii) the defendant used or obtained it, (iii) the defendant did so without a permissible statutory purpose, and (iv) the defendant acted with the specified culpable mental state." Glanton v. DirecTV, LLC, 172 F.Supp.3d 890, 894 (D.S.C. 2016) (quoting King v. Equable Ascent Fin., LLC, 1:12–CV–443, 2013 WL 2474377, at *2 (M.D.N.C. June 10, 2013)). The FRCA "imposes liability for negligent noncompliance with the Act, and it allows for enhanced penalties for willful violations." Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 417 (4th Cir. 2001) (citing 15 U.S.C. §§ 1681n, 1681o). To establish willfulness, the Taccinos must demonstrate "that the defendant knowingly and intentionally committed an act in conscious disregard for the

---

[8] In their combined Opposition and Motion for Order of Default or, in the Alternative, Order to Compel, the Taccinos request that the Court grant a default judgment against BB&T Dealer Finance or, in the alternative, "compel BB&T to admit they are responsible for the actions of BB&T Dealer Finance." (Pls.' Resp. Opp'n BB&T's Mot. Dismiss at 1, ECF No. 45). BB&T Dealer Finance has not been served, and according to BB&T, BB&T Dealer Finance cannot be served because it is not a "legal entity." (BB&T's Mot. Dismiss at 2, ECF No. 51). The Court will, therefore, deny the Taccinos' request for a default judgment against BB&T Dealer Finance. The Court will also not compel BB&T to admit that it is responsible for the actions of BB&T Dealer Finance. In its Motion and Reply, BB&T assumes that the claims alleged against BB&T Corp. in the Complaint are alleged against BB&T. BB&T is therefore proceeding under the assumption that it is responsible for the actions of BB&T Dealer Finance. Accordingly, the Court will deny the Taccinos' Motion.

rights of the consumer." <u>Ausherman v. Bank of America Corp.</u>, 352 F.3d 896, 900 (4th Cir. 2003) (quoting <u>Dalton</u>, 257 F.3d at 418).

Here, by failing to respond to BB&T's arguments, the Taccinos have abandoned their claims against BB&T. <u>See</u> <u>Muhammad v. Maryland</u>, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim."); <u>Ferdinand-Davenport v. Children's Guild</u>, 742 F.Supp.2d 772, 777 (D.Md. 2010) (same).

Further, BB&T's arguments appear meritorious. The Taccinos have not set forth any factual allegations that indicate BB&T acted willfully. Further, the Complaint explicitly states that Diehl's gave Ms. Taccino's information to financial institutions in order to find financing for her purchase of a Diehl's car. (Compl. at 3). A defendant is not liable under the § 1681b if it has a permissible purpose for accessing a plaintiff's credit report. <u>See</u> <u>Glanton</u>, 172 F.Supp.3d at 896. Courts apply a "reasonable belief" standard in assessing whether a permissible purpose existed. <u>Id.</u> Courts have held that a permissible purpose exists if "the lender has reason to believe that the information is to be used in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer." <u>Id.</u> (quoting <u>Wells v. Craig & Landreth Cars, Inc.</u>, No. 3:10-CV-00376, 2011 WL 1542121, at *2 (W.D.Ky. Apr. 21, 2011)). Reviewing the allegations in the Complaint in the light most favorable to the Taccinos, a permissible purpose existed for BB&T to access Ms. Taccino's credit information. Thus, the Court concludes that the Taccinos fail to state an FCRA claim against BB&T. Accordingly, the Court will grant BB&T's Motion.

### c. Diehl's Motion

Diehl's argues that the Court should dismiss the Complaint because the Taccinos have not properly pled claims of fraud, breach of contract, predatory lending, violation of TILA, or violation of 28 CFR § 50.15 against Diehl's. The Taccinos concede that the only claims they bring against Diehl's are violations of the Fifth and Sixth Amendments. Because the Taccinos do not argue that any other claims are brought against Diehl's, the Court will limit its inquiry to the alleged violations of the Fifth and Sixth Amendments.

To state a claim under § 1983, a plaintiff must allege that "the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." Philips v. Pitt Cty. Mem'l Hosp. 572 F.3d. 176, 180 (4th Cir. 2009). The color-of-law requirement is "synonymous with the more familiar state-action requirement—and the analysis for each is identical." Id. (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982)). "'[M]erely private conduct, no matter how discriminatory or wrongful[,]' fails to qualify as state action." Philips, 572 F.3d. at 181 (citing Mentavlos v. Anderson, 249 F.3d 301 (4th Cir. 2001)). Further, "private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." Id. (internal quotations omitted) (citing Wahi v. Charleston Area Med. Ctr., 562 F.3d 599, 616 (4th Cir. 2009)).

Here, the Taccinos' Complaint fails to state a claim on which relief may be granted because it brings constitutional claims against a party who is neither a state actor nor a person acting under color of state law. Diehl's is not a state actor; it is a private company that sells cars. (Compl. at 2). Further, the Taccinos do not allege that Diehl's was acting under the color of state law. As a result, the Taccinos' claims against Diehl's fail. Accordingly, the Court will grant Diehl's Motion.

### d.    Chessie's Motion

Chessie argues that the Complaint fails to state any claim against it. The Taccinos maintain that the Complaint properly states claims for: violations of the Fifth and Sixth Amendments; violation of federal laws governing a federally chartered credit union; fraud; and violation of the FCRA. The Court agrees with Chessie.

First, the Taccinos do not dispute that Chessie is not a state actor. As a result, the Taccinos' Fifth and Sixth Amendment arguments fail. See Philips, 572 F.3d. at 181 (citing Mentavlos, 249 F.3d 301). Second, the Complaint fails to state a claim for the violation of federal laws governing a federally chartered credit union. To clear the Rule 12(b)(6) hurdle, a complaint must sufficiently allege "each element of the cause of action so as to inform the opposing party of the claim and its general basis." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 348 (4th Cir. 2005). The Taccinos allege violations of "federal laws and regulations regarding banking," (Compl. at 1), and subsequently clarify in their Opposition that they only allege violations of "federal laws governing a federally chartered credit union doing business with a non-member," (Pls.' Opp'n at 1, ECF No. 44). But the Taccinos do not allege a violation of a specific federal statute. See Chao, 415 F.3d at 348. Thus, the

Taccinos fail to state a claim upon which relief may be granted under federal banking laws or federal laws governing federally chartered credit unions.

Third, the Taccinos fail to state a claim for fraud. Fraud claims are subject to heightened pleading standards under Rule 9(b), see Fed.R.Civ.Pro. 9(b), even when construing a pro se complaint, Coulibaly v. J.P. Morgan Chase Bank, N.A., No. DKC-10-3517, 2011 WL 3476994, at *19 n.23 (D.Md. Aug. 8, 2011). To state a claim for fraud under Maryland law, the plaintiff must show:

> (1) a representation made by a party was false; (2) its falsity was known to that party or the misrepresentation was made with reckless indifference to truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied upon the misrepresentation and had the right to rely upon it with full belief of its truth; and (5) that the plaintiff suffered damage directly resulting from the misrepresentation.

Dean v. Beckley, No. CCB-10-297, 2010 WL 3928650, at *4 (D.Md. Oct. 1, 2010) (citing Suburban Props. Mgmt. v. Johnson, 204 A.2d 326, 329 (Md. 1964)). In their Opposition, the Taccinos argue that they state a claim for fraud based on Ms. Taccino's June 2010 arrest. They do not contend that they state a claim for fraud against Chessie based on their 2016 interaction with Chessie. They further assert that "[t]here is no statute of limitations on fraud." (Pls.' Opp'n at 2). The Taccinos are mistaken. In Maryland, fraud claims are subject to a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2018). The Taccinos initiated this suit on March 29, 2018—almost eight years after Ms. Taccino's arrest. Accordingly, any claim of fraud arising out of Ms. Taccino's June 2010 arrest is time-barred.

Fourth, Chessie argues that the Taccinos fail to state a claim for violation of the FCRA because they do not specify what provision of the FCRA was allegedly violated, and because they do not allege that Chessie is a credit reporting agency. The Court agrees that the Taccinos fail to state a claim under the FCRA because they do not identify what provision of the FCRA Chessie violated. <u>Chao</u>, 415 F.3d at 348.[9]

In short, the Court concludes that the Taccinos fail to state any claim against Chessie. Accordingly, the Court will grant Chessie's Motion.

### e. Northwest Bancshares' Motion

Northwest Bancshares argues that the Taccinos fail to state any plausible claim against it. The Taccinos do not respond to any of the Northwest Bancshares' arguments. Instead, they contend that they erred in serving Northwest Bancshares, and that Northwest Bank is the proper party to the suit. The Court agrees with Northwest Bancshares that the Taccinos fail to state any plausible claims against it.

Here, the Taccinos allege that the transfer of their loan from Northwest Consumer Discount Co. to Northwest Bancshares breached a contractual obligation. But the Taccinos do not identify any contractual provision that imposes such an obligation. <u>See</u> <u>Polek v. J.P. Morgan Chase Bank, N.A.</u>, 36 A.3d 399, 416 (Md. 2012) ("a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness <u>facts</u> showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation

---

[9] Chessie also contends that the Taccinos fails to sufficiently plead discrimination, breach of contract, predatory lending, TILA, and FCRA claims against it. In their Opposition, the Taccinos assert that they adequately plead these claims against WEPCO, not Chessie. Accordingly, to Court will grant Chessie's Motion as to these claims.

by defendant.'" (quoting <u>Cont'l Masonry Co. v. Verdel Constr. Co.</u>, 369 A.2d 566, 569 (Md. 1977)). The Taccinos also generally allege that Northwest Bancshares discriminated against them and defrauded them and violated TILA. But the Taccinos do not identify what law Northwest Bancshares allegedly violated in discriminating against them. Likewise, the Taccinos do not identify any specific provision of TILA that Northwest Bancshares allegedly violated. The Taccinos also do not allege the time, place, or manner of the fraud with sufficient specificity to satisfy Rule 9(b)'s heightened pleading standard. <u>See</u> Fed.R.Civ.Pro. 9(b). The Taccinos, therefore, fail to state claims against Northwest Bancshares. <u>Chao</u>, 415 F.3d at 348.

Further, when a party fails to respond to an argument made in a motion to dismiss, they abandon that claim. <u>See</u> <u>Muhammad</u>, 2012 WL 987309 at *1 n.3; <u>see also</u> <u>Ferdinand-Davenport</u>, 742 F.Supp.2d at 777. The Taccinos do not respond to any of the arguments Northwest Bancshares makes in support of its Motion. Accordingly, the Taccinos have abandoned their claims, if any, against Northwest Bancshares. Accordingly, the Court will grant Northwest Bancshares' Motion.

### e.     WEPCO Motion

WEPCO asserts that the Taccinos fail to state any claim against it. The Taccinos concede that the Complaint does not state a claim against WEPCO under 28 CFR § 50.15, or for discrimination. The Taccinos nevertheless argue that they state plausible claims for: violations of the Fifth and Sixth Amendments; violations of state and federal banking laws; fraud; breach of contract; predatory lending; and violations of TILA and the FCRA. The Court agrees with WEPCO.

First, the Taccinos do not dispute that WEPCO is not a government entity. As a result, like their claims against Diehl's and Chessie, the Taccinos Fifth and Sixth Amendment claims against WEPCO also fail. See Philips, 572 F.3d. at 181 (citing Mentavlos, 249 F.3d 301). Second, in response to WEPCO's contention that they do not specify which federal or state banking laws WEPCO violated, the Taccinos assert that WEPCO violated "[Maryland] State Marital Property laws." (Pls.' Resp. & Opp'n Def. WEPCO's Mot. Dismiss at 1, ECF No. 43). This reference to Maryland State Marital Property laws does not, however, cure the Complaint's failure to state a specific statute as the genesis of the Taccinos' cause of action. Further, the Taccinos may not amend their pleadings through their briefs. Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998) (noting that plaintiffs are "bound by the allegations contained in [their] complaint and cannot, through the use of motion briefs, amend the complaint"). The Complaint does not state what state or federal banking laws WEPCO purportedly violated. The Taccinos, therefore, fail to meet their burden of alleging sufficient factual allegations to nudge their claims across the line from possible to plausible. See Twombly, 550 U.S. at 570.

Third, the Taccinos assert three new fraud claims in their Opposition. As discussed above, the Taccinos cannot amend the pleadings through briefs. See Zachair, 965 F.Supp. at 748 n.4. For the Taccinos remaining fraud claim to survive WEPCO's Motion, they must meet Rule 9(b)'s heightened pleading standard. Fed.R.Civ.Pro. 9(b). To satisfy this standard, the Taccinos must allege with particularity the "time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and

what was obtained thereby." <u>Ward v. Branch Banking & Tr. Co.</u>, No. ELH-13-01968, 2014 WL 2707768, at *6 (D.Md. June 13, 2014) (quoting <u>United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.</u>, 612 F.3d 724, 731 (4th Cir. 2010)). The Taccinos plead that WEPCO's fraud occurred on August 11, 2017, when WEPCO "knowingly, willfully and intentionally" listed Ms. Taccino as unmarried. Beyond this conclusory allegation, the Taccinos do not plead any factual matter that suggests WEPCO knew this information was false or intended to defraud the Taccinos. Accordingly, the Taccinos fail to plead their fraud claim against WEPCO with sufficient specificity to cross the line from possible to plausible. <u>See</u> <u>Twombly</u>, 550 U.S. at 570.

Fourth, to establish a breach-of-contract claim, the Taccinos must "allege with certainty and definiteness <u>facts</u> showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." <u>RRC Northeast, LLC v. BAA Maryland</u>, 994 A.2d 430, 440(Md. 2009) (citing <u>Cont'l Masonry Co. Inc.</u>, 369 A.2d at 569. Construing the pleadings in the light most favorable to the Taccinos, the parties entered into a contract on August 11, 2017, when WEPCO refinanced their automobile loan. The Taccinos argue that WEPCO breached the contract by identifying Ms. Taccino as unmarried. But the Taccinos have not identified any contractual provision that WEPCO allegedly breached in misidentifying Ms. Taccino as unmarried. Thus, the Taccinos fail to state a claim for breach of contract.

Fifth, Maryland law does not recognize a cause of action for predatory lending. <u>Wiseman v. First Mariner Bank</u>, No. ELH-12-2423, 2013 WL 5375248, at *7 (D.Md. Sept 23, 2013); <u>Willis v. Countrywide Home Loans Serv'g</u>, No. CCB-0901455, 2009 WL

5206475, at *8 (D.Md. Dec. 23, 2009). And the Taccinos do not plead that WEPCO's allegedly predatory behavior violated any specific law. See Suckal v. MTGLQ Investors LP, No. WDQ-10-1536, 2011 WL 663754, at *4 (D.Md. Feb. 14, 2011) ("To state a predatory lending claim, the plaintiff must allege the specific law violated by the defendant's predatory behavior." (citing Davis v. Wilmington Fin., Inc., No. PJM–09–1505, 2010 WL 1375363, at *7 (D.Md. Mar. 26, 2010))). Thus, the Taccinos fail to state a claim for predatory lending.

Finally, WEPCO argues that the Taccinos fail to state a claim for violation of TILA or the FCRA because they do not specify what provision of either act WEPCO allegedly violated. Because the Taccinos do not identify any specific provision WEPCO violated, they do not plead their claims with sufficient specificity to survive a motion to dismiss. Chao, 415 F.3d at 348.

In sum, the Court concludes that the Taccinos fail to state any plausible claim against WEPCO. Accordingly, the Court will grant WEPCO's Motion.

**C.     The Taccinos' Motions**

> **1.     "Motion for Sanctions and Plaintiff[s'] Motion to Join United States of America as Co-Plaintiff"**

The Taccinos request that the Court to grant sanctions against WEPCO's counsel, Michael Hourigan, of the firm Ferguson, Schetelich & Ballew, and Christopher Logsdon of Hidey Coyle & Monteleone. The Taccinos contend that Hourigan is representing both WEPCO and Chessie, thereby creating a conflict of interest. But joint representation of parties in civil cases is not per se impermissible under the Model Rules of Professional

Conduct so long as attorneys abide by Rule 1.7 and Rule 1.9, which govern conflicts of interest and duties owed to former clients, respectively. Model Rules of Prof'l Conduct R. 1.9, 1.7 (Am. Bar. Ass'n 2016). The Taccinos also do not identify any specific ethical rules that either attorney breached. The Court will, therefore, deny the Taccinos' request to impose sanctions.

The Taccinos also move to join the United States of America (the "USA") as Co-Plaintiff to "take appropriate action against the Defendant WEPCO FCU for violating the U.S. District Court order or sealing." (Pls.' Resp. Opp'n at 3, ECF No. 43). The Complaint contains no allegations that WEPCO violated the Court's orders, and the Taccinos cannot amend their pleadings through briefs. See Zachair, 965 F.Supp. at 748 n.4. The Court will, therefore, deny the Taccinos' request to join the USA as Co-Plaintiff.

Because the Court will deny both of the Taccinos' requests, the Court will deny this Motion.

### 2. Motion to Join the United States of America as Co-Plaintiff

The Taccinos again move to join the USA as Co-Plaintiff. Specifically, the Taccinos argue that under 28 CFR § 50.15, Ms. Taccino was entitled to be represented by the Department of Justice ("DOJ") in defending against her June 2010 arrest for trespassing on Chessie's property. As discussed above, the fraud claim the Taccinos bring based on Ms. Taccino's arrest is time-barred. In addition, the Taccinos provide no support for the proposition that 28 CFR § 50.15 entitles them to join the USA as Co-Plaintiff in the current suit. Further, 28 CFR § 50.15 does not guarantee that DOJ will always represent government employees. The DOJ may decline to represent federal employees if they

determine that the "conduct giving rise to the suit does not reasonably appear to have been performed within the scope of [the employee's] employment with the federal government." Jamison v. Wiley, 14 F.3d 222, 229 (4th Cir. 1994) (quoting 28 C.F.R. § 50.15(b)(1)). The Taccinos allege that Ms. Taccino was en route to meet a supervisor when she stopped at Chessie and that the inquiry related to her government salary. (Compl. at 8). But these facts alone are not sufficient to show that Ms. Taccino was acting within the scope of her federal employment at the time of her arrest. Accordingly, the Court will deny the Taccinos' Motion.

### 3. Motion for Order of Default or, in the Alternative, Motion to Compel

The Taccinos request that the Court grant default judgment against Capital One, Inc. ("Capital One"), or in the alternative, compel Capital One to provide proof that they "are not the entity or legal defendant in this case and are not responsible for the unlawful actions of Capital One Auto Finance, Inc." (Pls.' Mot. Default J. at 1, ECF No. 48).

On June 6, 2016, the Taccinos' service of Capital One was rejected because the name of the company they provided did not match the name of the company on file with the Secretary of State or other appropriate state agency. (Pls.' Mot. Default J. Ex. 3 at 4, ECF No. 48-3). The Taccinos' subsequent attempt at serving Capital One was similarly unsuccessful: it was returned as undeliverable. (Id. at 7). Thus, the Court has no record that

the Taccinos served Capital One.[10] Accordingly, the Court will deny the Taccinos' Motion for Default or in the Alternative to Compel.

Under Federal Rule of Civil Procedure 4(m) and Local Rule 103.8(a) (D.Md. 2018), a defendant must be served within ninety days of filing the complaint. To date, the Court has no record that Capital One was served. The court will, therefore, order the Taccinos to show cause as to why the Complaint should not be dismissed as against Capital One.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant: OneMain's Motion (ECF No. 37); Mariner Finance's Motion (ECF No. 26); Ford Motor's Motion (ECF No. 13); Diehl's Motion (ECF No. 10); Chessie's Motion (ECF No. 30); Northwest Bancshares' Motion (ECF No. 23); and WEPCO's Motion (ECF No. 31). The Court will also deny the Taccinos': "Motion for Sanctions and Plaintiff[s'] Motion to Join United States of America as Co-Plaintiff" (ECF No. 43); Motion to Join the United States of America as Co-Plaintiff (ECF No. 44); Motion for Order of Default or, in the Alternative, Order to Compel (ECF No. 45); and Motion for Order of Default or, in the Alternative, Motion to Compel (ECF No. 48). A separate Order follows.

Entered this 29th day of March, 2019.

_____/s/_____
George L. Russell, III
United States District Judge

---

[10] The Court notes that even though the Taccinos lodge allegations against Capital One Auto Finance in the Complaint, Capital One Auto Finance is not a Defendant in the case, and it also has not been served.